UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SEAN K. HEALY,                                  :
                                                :
                Plaintiff,                     :     Civil Action No. 23-CV-565
                                                :
                -against-                     :
                                                :
CAREMOUNT MEDICAL P.C.                          :
                                                :
                Defendant.                     :
-------------------------------------------------------X

        Plaintiff Sean K. Healy ("Plaintiff" or "Healy"), by his attorneys, Menken Simpson & Rozger LLP, complaining of Defendant Caremount Medical P.C. ("Defendant" or "Caremount"), alleges:

## I.  NATURE OF ACTION

        1.     This action is brought to remedy claims of discrimination under the New York State Human Rights Law, Executive Law §§ 290 *et seq.* (the "New York State Human Rights Law" or "NYSHRL").

        2.     Plaintiff seeks injunctive and declaratory relief, economic, compensatory, and punitive damages, attorneys' fees and all other appropriate relief pursuant to relevant law.

## II.  JURISDICTION AND VENUE

        3.     The Court has jurisdiction of this action under 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

1

4. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

5. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

### III.  PARTIES

6. Plaintiff Healy is a resident of the State of New Jersey, and, at all times relevant to this suit, was an "employee" of Defendant Caremount as that term is defined under the NYSHRL.  At all times relevant to this suit, Healy was disabled as that term is defined by the NYSHRL.

7. Defendant Caremount is a New York professional corporation engaged in the business of providing health services through a group of independent healthcare practitioners located in the New York metropolitan area. Caremount was organized under the laws of the State of New York, maintains its headquarters in New York, and regularly does business within the State of New York. At all times relevant to this suit, Caremount was Healy's "employer" within the meaning of the NYHRL.

8. In or around July 2021, Optum Care acquired Caremount. Caremount holds itself out as one of the largest independent multi-specialty medical groups in the United States.

## IV. FACTUAL ALLEGATIONS

*(Healy's Background and Job Performance)*

9. Healy completed his undergraduate studies in System Engineering at University of Virginia and obtained a graduate degree in Public Policy from Harvard University.

10. He has nearly twenty (20) years of experience in strategic planning, physician alignment and network development at upper echelon NYC healthcare institutions like Mount Sinai where he rose to the level of Chief Operations Officer in charge of Physician Network Development.

11. Healy also has experience doing consulting work in the health services industry.

12. Healy has never had a substantial problem in his entire professional career that led to the termination of his employment.

13. Caremount offered Healy the position of Chief Growth Officer on December 13, 2021 at a starting salary of $350,000, plus a sign-on bonus of $135,000 and an equity award to vest over a four year period.

14. Healy accepted Caremount's offer and started at the job on January 25, 2022. He reported to Chief Value Officer, Peter Kelly.

15. As Caremount's Chief Growth Officer, Healy's primary responsibility was to grow the company's physician network by reaching out and developing new and existing relationships so an acquisition could be executed.

16. With his consulting, development and management background, Healy worked with his team to fully engage in the due diligence of assessing whether a particular physician or medical group was appropriate for acquisition.

17. Healy met weekly with his New Jersey team and a New York team was in the process of being built.

18. Healy met weekly and in person with his boss, Peter Kelly, in Caremount's principal office in Mount Kisco, New York.

19. Despite having some symptoms of long-term clinical depression that he has been battling for nearly 30 years, that Caremount upon information and belief, may have known about, Healy's job performance from January when he started at Caremount until May 18, 2022 was satisfactory.

20. At his weekly meetings with Kelly, Healy provided an update of what he and his team were doing and what they had accomplished. Kelly might have expressed some minor annoyance with Healy's work at some point during this time but he never expressly or implicitly suggested in any way that Healy was underperforming on the job.

*(Healy's Mental Health Challenges)*

21. Healy has battled and suffered from diagnosed clinical depression since he was in his early 20's. He has regularly taken prescribed psychiatric medications since 1993 and has been in treatment with a psychiatrist and psychologist for the last 16 years.

22. Despite these challenges, Healy has been able to work and maintain steady employment in the consulting and business development community for years. He has been actively employed in high level positions in healthcare since 1999.

23. In the morning of May 18, 2022, Healy called Caremount's Chief People Officer, Anne Henning, and told her he was struggling mentally. Henning expressed concern and insisted that Healy come from his home in New Jersey to Caremount's Mount Kisco, New York office to meet with her and his boss, Kelly.

24. In the afternoon of May 18, 2022, Healy met with Henning and Kelly and expressly advised he was suffering from mental health issues. Henning responded that Healy could continue to work or take a medical leave. Healy replied he would think about it and get back to them. At no time during this meeting did Henning and/or Kelly inform Healy that Caremount was concerned about his performance or intended to terminate his employment.

25. On May 22, 2022, Kelly, for the first time since Healy started at Caremount, emailed Healy to scold him for not being completely prepared for a meeting scheduled for the following day about growth in New York. At no time prior to Kelly's May 22, 2022 email did anyone affiliated with or employed by Caremount provide Healy written notification that his work was unsatisfactory or being questioned.

26. On May 23, 2022, Healy notified Henning and Kelly that he would take a medical leave.

27. From May 23, 2022 to early October 2022, Healy actively participated in in-patient and out-patient mental health care in an effort to heal himself and render himself able to return to work at Caremount.

28. Healy complied with the terms of the leave and regularly communicated with The Hartford, Caremount's insurance provider, as instructed.

*(Caremount's Failure to Engage in the Required Interactive Process)*

29. Healy and/or his healthcare provider provided monthly documentation to The Hartford to inform Caremount of the status of his leave.

30. On or about the middle of October 2022, Healy's psychiatrist notified Caremount in writing that Healy was extending his leave until November 20, 2022 but able to return to work the following day, November 21, 2022.

31. Healy had every intention to return to his job as Caremount's Chief Growth Officer on Monday November 21, 2022.

32. On October 31, 2022, Caremount's Leave Administrator Dana Marano sent Healy overnight written notice, delivered on November 1, 2022, terminating his employment with Caremount. The notice read:

> We received an ADAAA extension request from Hartford indicating you will be out of work until November 20, 2022. Unfortunately, due to the importance of your position in the organization and the hardship your absence places on the business, we are unable to approve the ADAAA request until that date. This letter provides notice to you that we are reclassifying your employment status to "terminated" effective November 1, 2022.

33. From May 22, 2022 to October 31, 2022 when Marano sent Healy the above referenced overnight termination notice, neither Henning, Caremount's Chief People Officer, nor Kelly, Healy's direct boss and Caremount's Chief Value Officer, communicated with or made any effort to contact Healy to show support or more importantly to engage in the legally required interactive process.

34. From mid-October when The Hartford and Caremount received Healy's psychiatrist's letter to October 31, 2022, neither Henning nor Kelly reached out to Healy

6

to assess whether he was able to return to work before November 21 or earlier in November and as early as November 1.

35. The required interactive process requires engaging and/or meeting with the employee to assess what the employee's needs are and discussing whether there are available alternatives when the employer, rightly or wrongly, claims the employee's request is too burdensome, a claim Caremount made in Marano's October 31, 2022 overnight termination notice sent to Healy.

36. Caremount documented justification for firing Healy – that his absence for an additional 20 days when he had been out for over five months already – is pretextual; the real reason was that Caremount regarded Healy as disabled because they knew he had suffered from mental health problems.

37. By failing to meaningfully engage with Healy in the interactive process and then terminating Healy's employment while he was out on leave, Caremount violated the NYSHRL.

## FIRST CAUSE OF ACTION

38. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

39. Caremount regarded Plaintiff as disabled within the meaning of the NYSHRL in that it believed that he was unable to perform the essential functions of his job because the disability it regarded him as afflicted by was not transitory but permanent in nature.

40. As evidenced by his credentials and the lack of complaints by his superior, Plaintiff was a qualified individual under the law in that he was able to perform the essential functions of his job.

41. Caremount violated the NYSHRL by terminating Plaintiff's employment while he was out on leave and because it regarded him as disabled when he could have returned to work on November 21, 2022 or earlier.

42. As a direct and proximate result of Caremount's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits.

43. As a direct and proximate result of Caremount's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

## SECOND CAUSE OF ACTION

44. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

45. In violation of the NYSHRL, Caremount discriminated against Plaintiff on the basis of his disability when it terminated his employment on October 31, 2022.

46. In violation of the NYSHRL, Caremount discriminated against Plaintiff when it failed to offer him reasonable accommodations for his disability which would

8

allow him to satisfy the essential requisites of his job, resulting in the termination of his employment.

47. In taking the above described discriminatory actions, Caremount acted with malice and reckless indifference to Plaintiff's rights under the NYSHRL.

48. Plaintiff has lost wages, promotional opportunities and other benefits and compensation, and has suffered and continues to suffer severe mental anguish, emotional distress, humiliation and other compensable injuries as a result of Caremount's discriminatory practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sean K. Healy respectfully requests that this Court enter a judgment:

    a. Declaring the acts and practices complained of herein to be violations of the NYSHRL;

    b. Enjoining and permanently restraining these violations of law;

    c. Directing Defendant Caremount to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

    d Directing Defendant Caremount to place Plaintiff Healy in the position he would have occupied but for Defendant's unlawful conduct, and making him whole for all earnings and other benefits he would have received but for Defendant's unlawful conduct, including but not limited to wages, bonuses, other lost benefits, loss of good will, and interest thereon;

  e.  Directing Defendant Caremount to pay Plaintiff Healy front pay, to compensate him for all monetary and/or economic damages, including but not limited to the loss of past and future income, wages, compensation, seniority and other benefits of employment;

  f.  Directing Defendant Caremount to pay Plaintiff Healy compensatory damages, including damages for his mental anguish, denial of life's pleasures, pain and suffering and humiliation; liquidated damages; punitive damages and interest thereon;

  g.  Directing Defendant Caremount to pay Plaintiff Healy an award of punitive damages;

  h.  Awarding Plaintiff Healy the costs of this action together with reasonable attorneys' fees;

  i.  Granting such other relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Sean K. Healy respectfully demands that this proceeding be tried to a jury.

Dated: New York, New York
   January 23, 2023

                Respectfully Submitted,

                MENKEN SIMPSON & ROZGERR LLP

              By: *Bruce E. Menken*
                  Bruce E. Menken
                  80 Pine Street, 33rd Floor
                  New York, NY 10005
                  Ph: (212) 509-1616
                  Fax: (212) 509-8088
                  bmenken@nyemployeelaw.com